**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

MICHAEL MAYER,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

No. C12-4114-MWB
No. CR09-4051-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S AMENDED § 2255
MOTION**

_____

**TABLE OF CONTENTS**

I.   **INTRODUCTION AND BACKGROUND**............................................ 2
  A.   *Criminal Case Proceedings* ...................................................... 2
  B.   *Mayer's § 2255 Motion* ........................................................... 9

II.  **LEGAL ANALYSIS** ..................................................................... 10
  A.   *Standards For A § 2255 Motion* ............................................. 10
  B.   *Procedural Matters* ................................................................ 13
      1.   *Preliminary matters* ....................................................... 13
      2.   *Procedural default* ......................................................... 13
  C.   *Ineffective Assistance Of Counsel* ......................................... 14
      1.   *Applicable standards* ...................................................... 16
          a.   *Strickland's "deficient performance" prong*................ 16
          b.   *Strickland's "prejudice" prong*............................... 18
      2.   *Mayer's claims* ............................................................... 19
          a.   *Advising on the plea agreement* .............................. 19
          b.   *Defense at trial* ..................................................... 23
  D.   *Certificate Of Appealability* ................................................... 27

III. **CONCLUSION** ............................................................................. 28

# I.    INTRODUCTION AND BACKGROUND

This case is before me on petitioner Michael Mayer's Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Mayer asserts that his counsel provided him with ineffective assistance in failing to adequately advise him on his plea agreement and investigate possible exculpatory evidence. The respondent denies that Mayer is entitled to relief on his claims.

## A.    Criminal Case Proceedings

On September 16, 2009, a three-count Indictment was returned against Mayer charging him with: (1) sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and 2251(e) (Count 1); (2) receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2)(A) and 2252A(b)(1) (Count 2); and (3) possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 3).

On May 5, 2010, Mayer signed an agreement to plead guilty to Count 1. Paragraph 8 of the plea agreement contained the following stipulated facts:

> By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees that these facts are true and may be used to establish a factual basis for defendant's guilty plea and sentence. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court. Defendant agrees that the stipulation below is a summary of the facts against

defendant and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

A. In or between May 2008 and August 2008, in his residence in Sibley, Iowa, defendant used, persuaded, induced, and enticed, and attempted to use, persuade, induce, and entice P.M., a 14-year-old female, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, causing said visual depictions to be produced using materials, namely an LG cell phone, that had been shipped and transported in interstate and foreign commerce, knowing and having reason to know that said visual depictions would then be transported in interstate and foreign commerce, with said visual depictions then being transported in interstate and foreign commerce.

B. In or between May 2008 and August 2008, defendant communicated with P.M. on the Internet, through cell phone conversations, and through cell phone text messages. Defendant knew P.M. was 14 years old and lived in California. Defendant sent sexually explicit videos and images of himself from his cell phone to P.M.'s LG cell phone. On more than one occasion, using his cell phone, defendant asked P.M. to send him sexually explicit videos and images of herself. P.M. then used her LG cell phone to take videos and images of her genitals and of her touching her genitals with her fingers. She used her LG cell phone to send these videos and images to defendant. P.M. sent approximately 50-100 sexually explicit images and 2-3 sexually explicit videos of herself to

defendant. Defendant knowingly received, possessed, and viewed these depictions. He eventually deleted all of these depictions. A forensic examination of defendant's Dell computer revealed 42 sexually explicit images of P.M.; these included 5 separate images and 37 duplicates of these images.

Plea Agreement at ¶ 8.

A section of the plea agreement, entitled "ACKNOWLEDGEMENT OF DEFENDANT'S UNDERSTANDING," provided in pertinent part:

27. Defendant acknowledges defendant has read each of the provisions of this entire agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. . . . Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance, whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

28. Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement), and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges defendant's understanding of the nature of each

> offense to which defendant is pleading guilty, including the
> penalties provided by law.

Plea Agreement at ¶¶ 27-28.

On May 10, 2010, Mayer attempted to commit suicide. He subsequently decided not to enter a guilty plea to Count 1. On October 8, 2010, the prosecution filed a motion, pursuant to Federal Rule of Evidence 104(a), requesting that I rule on the admissibility at trial of stipulated facts from the plea agreement. Mayer resisted the prosecution's motion, arguing that because the plea agreement was never confirmed through a formal plea colloquy, it should be inadmissible at trial. I ruled that the plea agreement was admissible at trial based on controlling Eighth Circuit precedent in *United States v. Quiroga*, 554 F.3d 1150 (8th Cir. 2009). On the same day of my ruling, Mayer pled guilty to Counts 2 and 3 without a plea agreement. Mayer proceeded to trial on Count 1.

A jury trial commenced on October 26, 2010. At trial, the victim, P.M., testified that she met Mayer in May 2008 while playing a game on the Internet. Between May and August 2008, she and Mayer had communicated via the Internet, had cell phone conversations, and text messages. Most of their communications were text messages. P.M. told Mayer she was 14 years old and lived in California. P.M. testified the relationship between her and Mayer eventually became sexual. Mayer first sent P.M. a picture of his erect penis and requested her to send him a picture of herself in return. The first time Mayer asked, P.M. did not send him a picture. However, Mayer continued to ask P.M. for pictures. She testified that Mayer specifically and repeatedly requested that she send photos of her breasts, and genitalia, or a video of her "fingering herself," and that she was reluctant to do so initially. Eventually, P.M. used her cell phone to take the pictures and videos Mayer requested, and she sent them to Mayer via his e-mail account.

P.M. testified that Mayer talked with her about coming to California to visit her. P.M. did not take him seriously at first, but Mayer continued to ask about visiting her, and he asked her to look for hotels and airports. However, Mayer and P.M. never set a date to meet each other.

Mayer's counsel cross-examined P.M. extensively. P.M. was asked if she had used sexually explicit terms during her conversations with Mayer. She testified she had, and that both she and Mayer had used such language. P.M. was asked seven times if a variety of her actions, including sending sexually explicit text messages to Mayer and sending sexually explicit photographs of herself to him, were of "her own free will." Trial Tr. at 73-78. Each time she answered, "yes." Trial Tr. at 73-78.

The prosecution offered as evidence a compact disc containing 119 images of P.M. that the prosecution's forensic examiner had recovered from the hard drive on Mayer's computer. These 119 images included 18 unique images and copies of these images. Of these 18 images, 5 depicted P.M.'s genitals; these included one full-body image and 4 close-up images of her genitals. The forensic examiner testified that all 119 images had been deleted before the computer was seized. He testified regarding the different actions taken by a user that could cause copies of images to be stored on a hard drive, including the user's accessing images from the Internet or e-mails, saving images, and viewing images after they were saved. The prosecution also offered as evidence a list of link files from Mayer's computer that showed that that computer had been used to access images with filenames containing P.M.'s first name. The evidence from Mayer's computer included a list of Internet searches for P.M. and her address. In addition, the prosecution offered into evidence a portion of the plea agreement Mayer signed in May 2010, including the factual stipulations in paragraphs 8(A) and 8(B).

The parties stipulated that Mayer's cell phone contained a 15-second video showing Mayer's penis as he masturbated and ejaculated. The parties also stipulated that

Mayer had sent this video to P.M. The prosecution further offered as evidence a text message log showing that approximately 3,800 text messages were sent from Mayer's phone to P.M.'s phone and that approximately 3,900 text messages were sent from P.M.'s phone to Mayer's phone, as well as a cell phone log showing approximately 60 calls from P.M.'s phone to Mayer's phone and approximately 69 calls from Mayer's phone to P.M.'s phone.

In addition, the prosecution offered as evidence the video recording of Mayer's interview, by an Iowa Division of Criminal Investigation agent, on September 4, 2008. During this interview, Mayer stated that P.M. had told him she was 14 years old. Mayer also admitted that he had sent P.M. images of his penis and videos of him masturbating and ejaculating. Mayer further stated that P.M. had sent him sexually explicit pictures of herself, including pictures of her genitals and videos of her playing with herself. He stated he had sent P.M. about as many images as he had received from her.

Mayer testified that he had never asked P.M. to send him sexually explicit images of herself. He testified that he had never sent her sexually explicit images of himself without her first asking for them. Mayer also testified that he had not expected to receive any of the sexually explicit images that P.M. had sent to him. Mayer testified that he had saved sexually explicit images he received from P.M. to the "My Pictures" folder on his computer's hard drive. He testified that he had never gone back to look at the pictures of P.M. he had saved in that folder. He testified that he sometimes deleted the pictures "right away" and sometimes saved them for "a couple of days." Trial Tr. at 251, 280. Mayer further testified that, between June and August 2008, he had sent P.M. approximately 30 to 40 pictures of his erect penis and approximately 8 to 10 videos of him masturbating and ejaculating.

During the prosecution's cross-examination of Mayer, the following exchange occurred:

Q.      And this guilty plea you signed on May 5, 2010; is that right?

A.      Correct.

Q.      And you initialed all the paragraphs in the plea agreement.

A.      Yes, I did.

Q.      You read each of the paragraphs before you initialed them?

A.      Yes, I did.

Q.      You read them very carefully; right?

A.      I read them.

Q.      Did you – well, did you just skim them or did you –

A.      No, I read them.

Q.      Okay. Did you read through every sentence?

A.      Yes, I did.

Q.      And you knew that this was a very important document?

A.      Yes, I did.

Q.      And you knew a guilty plea was not something to take lightly.

A.      Correct.

Q.      Did you understand these paragraphs before initialing them?

A.      Yes, I did.

Q.      And then after initialing all the paragraphs, you signed the plea agreement.

A.      Correct.

Trial Tr. at 287-88.

At the close of the prosecution's case and again at the close of all the evidence, Mayer moved for judgment of acquittal. I denied Mayer's motion.

On October 27, 2010, the jury found Mayer guilty. Mayer subsequently filed a renewed motion for judgment of acquittal, under Federal Rule of Criminal Procedure 29, and a motion for new trial, under Federal Rule of Criminal Procedure 33. Mayer argued that there was insufficient evidence that he persuaded, induced, or enticed P.M. to engage in the sexually explicit conduct for the purpose of creating a depiction of sexually explicit conduct and there was a substantial likelihood that a miscarriage of justice occurred. On December 27, 2010, I denied both motions.

On March 21, 2011, I granted Mayer's motion for a downward variance and sentenced him to the statutory mandatory minimum sentence on Count 1 of 180 months imprisonment, 180 months of imprisonment on Count 2, and 120 months of imprisonment on Count 3, with the sentences to be served concurrently.

Mayer filed a timely appeal in which he contended that I erred in denying his motion for new trial and judgment of acquittal. Mayer argued that the prosecution failed to prove beyond a reasonable doubt that Mayer induced, enticed, or influenced P.M. to take and send him sexually explicit photos of herself. The Eighth Circuit Court of Appeals denied Mayer's appeal. *United States v. Mayer*, 674 F.3d 942, 947 (8th Cir. 2012). Mayer then filed a petition for a writ of certiorari with the United States Supreme Court. The Court denied Mayer's petition. *Mayer v. United States*, 133 S. Ct. 357 (2012).

### B.    Mayer's § 2255 Motion

On December 12, 2012, Mayer filed a *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Respondent

filed a timely answer to Mayer's § 2255 motion. After the respondent filed its answer, I directed the Clerk of Court to appoint counsel to represent Mayer and set a briefing schedule. Mayer then sought, and was granted, two extensions of time in which to file his amended § 2255 motion. Mayer then sought, and was granted, multiple extensions of time in which to file his brief in support of his § 2255 motion. Ultimately, instead of filing a brief in support of his § 2255 motion, Mayer filed a motion to amend his § 2255 motion. I granted Mayer's motion to amend and on February 3, 2014, Mayer filed his amended § 2255 motion. In his amended motion, Mayer asserts that his counsel provided him with ineffective assistance in failing to adequately advise him concerning his plea agreement. Mayer also contends that his counsel provided him with ineffective assistance in failing investigate possibly exculpatory evidence.[1] Respondent filed a timely resistance to Mayer's Amended § 2255 motion. Respondent denies that Mayer is entitled to any relief on his ineffective assistance of counsel claims. Mayer did not file a reply brief.

## II.    LEGAL ANALYSIS

### A.    Standards For A § 2255 Motion

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the

---

[1]Mayer raised four other grounds for relief in his original *pro se* § 2255 motion. He concedes in his amended § 2255 motion that none of those four grounds are legally viable.

10

> court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)

("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief

on the ground that his sentence was imposed in the absence of jurisdiction or in violation

of the Constitution or laws of the United States, was in excess of the maximum authorized

by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339

F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must

demonstrate a violation of the Constitution or the laws of the United States."). Thus, a

motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in

scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir.

1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v.

United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting Wilson).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided

on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28

U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting

*United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780.

One exception to that principle arises when there is a "miscarriage of justice," although

the Eighth Circuit Court of Appeals has "recognized such an exception only when

petitioners have produced convincing new evidence of actual innocence," and the

Supreme Court has not extended the exception beyond situations involving actual

innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has

emphasized the narrowness of the exception and has expressed its desire that it remain

'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255

may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily

"is not available to correct errors which could have been raised at trial or on direct

appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Mayer's claims for § 2255 relief.

### B. Procedural Matters

#### 1. Preliminary matters

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "grant a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001) (emphasis in original). Where a motion raises no disputed questions of fact, however, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the motion and the record conclusively show that Mayer is entitled to no relief.

#### 2. Procedural default

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Because I construe Mayer's claims to be claims of ineffective assistance of counsel, I will consider them on the merits.

## C.  Ineffective Assistance Of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; see also Steele v United States, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of both prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[2]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Mayer's claims.

### 1. *Applicable standards*

### a. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must

_____

[2] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with

opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b.    *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland,* 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable,"

> likelihood of a different result. *Richter*, 562 U.S., at ----,
> 131 S. Ct., at 791.

*Cullen,* 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### 2.    *Mayer's claims*

#### a.    *Advising on the plea agreement*

Mayer contends that his counsel was ineffective because he "failed to advise Mayer adequately on the plea agreement." Amended Complaint at 9.   In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the United States Supreme Court held that the *Strickland* standard was applicable to guilty pleas.   Under *Hill*, Mayer carries the burden of establishing that his counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Id*. at 59. Typically, to establish prejudice under *Hill*, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Id*.   Unlike this case, *Hill* involved a completed guilty plea. *See id.* at 53-54.   Here, Mayer argues that had his counsel adequately advised him, there would have been no plea agreement to be used against him during his trial.   Contrary to Mayer's argument, I find that his counsel provided effective assistance to Mayer in advising him about the plea agreement and Mayer was not prejudiced as a result of his counsel's advice.

The record shows that Mayer's counsel discussed the plea agreement and the merits of pleading with Mayer multiple times before Mayer signed the plea agreement. For example, on January 14, 2010, Mayer's counsel and his law partner met with Mayer for 1.75 hours.   Reinschmidt Aff. at 2.   Thirteen days later, on January 27, 2010, Mayer agreed to accept the plea offer. *Id.*   However, five days later, on February 1, 2010,

Mayer told counsel that he had changed his mind and wanted to go to trial. *Id.* Mayer's counsel spoke telephonically with Mayer on February 2, 2010, during which counsel explained that he had great concerns about going to trial for the reason that counsel did not feel Mayer had a strong enough defense to risk forgoing a plea. Counsel followed up that conversation with a letter on February 3, 2010. In the letter, counsel reviewed his analysis of the costs and benefits of a plea versus a trial. In particular, counsel stressed that if Mayer went to trial, and was found guilty on Count 1, he faced a possible life sentence under the federal sentencing guidelines. Mayer's counsel repeated his advice that Mayer should not go to trial "but that given your decision I would use all my skill and knowledge to achieve the best outcome at trial for you." Reinschmidt Letter of Feb. 3, 2010 at 1. Between February and April 2010, Mayer's counsel spoke frequently with Mayer by telephone.[3] During these discussions, Mayer's counsel spoke with Mayer about both trial preparations and the benefits of a plea.

On April 26, 2010, Mayer's counsel and Mayer discussed a possible plea agreement for 1.5 hours. Three days later, on April 29, 2010, Mayer told his counsel that he wanted to accept the plea agreement. On May 3, 2010, Mayer's counsel spoke to Mayer about the plea agreement. On May 5, 2010, Mayer's counsel and his partner spoke with Mayer over the phone for 1.25 hours. During this discussion, Mayer's counsel discussed each paragraph of the plea agreement with Mayer. They also discussed possible outcomes and the merits/demerits of trial. Following that discussion, Mayer signed the plea agreement that day. Mayer initialed paragraph 8 of the plea agreement, which included an express waiver of rights allowing use of the stipulated facts in the plea agreement in any proceeding "should defendant violate or refuse to follow through on

---

[3]Mayer lived almost 2 hours from his counsel in Sioux City, so many of Mayer's discussions with his counsel were by telephone.

this plea agreement . . . ." Plea Agreement at 3. Mayer also initialed paragraph 24 of the plea agreement, which provided that the stipulated facts could be used if he breached the plea agreement. *Id*. at 8. Mayer also initialed paragraph 27 of the plea agreement, in which he acknowledged he had read each of the provisions in the plea agreement with the assistance of counsel and understood its provisions. *Id*. at 9. That paragraph further stated, "Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation." *Id*.

On May 26, 2010, Mayer's counsel sent Mayer a letter in which he stated, "in leading up to your arrest on May 12, 2010, we had many discussions regarding whether or not you should accept the plea offer, and what the sentencing guidelines are for your case." Reinschmidt Letter of May 26, 2010 at 1. In the letter, Mayer's counsel reviewed his discussion with Mayer about Mayer's second-guessing his decision to plead guilty after he signed the plea agreement. *Id*. at 1-2. Mayer's counsel also reviewed why he thought Mayer would be convicted at trial:

> I have told you repeatedly that the two month exchange of nude photographs and masturbatory videos between yourself and [P.M.] (during summer 2008) will certainly be interpreted to mean that you enticed/persuaded her to send nude photographs and sexually explicit videos of herself to you. Those exchanges were not a one-time, unilateral exchange from her to you, or vice versa. There was a two month (plus) pattern of receipt of a nude photograph from you to her, or her to you, followed by the other person then sending a photo/video back. Your continued statement that you didn't "ask" her to send you a photo/video is, I think: 1) not believable; and, 2) even if the jury truly believes you did not verbally ask her to send you a photograph/video, they will interpret the conduct of exchanges as the de facto equivalent of asking her.

*Id.* at 2. Mayer's counsel's analysis was an accurate analysis of the evidence that ultimately was presented at trial and the difficulties in Mayer's case.

Mayer clearly understood the terms of the plea agreement. At trial, Mayer testified that he had read through the plea agreement, and that he understood everything in the plea agreement:

> Q.　And this guilty plea you signed on May 5, 2010: is that right?
>
> A.　Correct.
>
> Q.　And you initialed all of the paragraphs of the plea agreement.
>
> A.　Yes, I did.
>
> Q.　You read each of the paragraphs before you initialed them?
>
> A.　Yes, I did.
>
> Q.　You read them very carefully; right?
>
> A.　I read them.
>
> Q.　Did you – well, did you just skim them or did you –
>
> A.　No, I read them.
>
> Q.　Okay. Did you read through every sentence?
>
> A.　Yes, I did.
>
> Q.　And you knew that this was a very important document?
>
> A.　Yes, I did.
>
> Q.　And you knew a guilty plea was not something to take lightly.
>
> A.　Correct.

> Q. Did you understand these paragraphs before initialing them?
>
> A. Yes, I did.
>
> Q. And then after initialing all the paragraphs, you signed the plea agreement.
>
> A. Correct.

Trial Tr. at 287-88.

I conclude that Mayer's counsel thoroughly reviewed Mayer's options with him regarding the plea agreement and the benefits and drawbacks of a guilty plea. Thus, Mayer's counsel's actions clearly fell "within the range of competence demanded of attorneys in criminal cases," *Hill*, 474 U.S. at 56, and Mayer was not prejudiced as a result of his counsel's advice. In sum, Mayer has failed to satisfy both the incompetence prong and prejudice prong of *Strickland* and this claim is denied.

### b.    *Defense at trial*

Mayer contends counsel was ineffective because of counsel's "failure to follow up on Mayer's repeated reports" of possible exculpatory evidence. Amended Mot. at 12. Mayer argues that P.M. "had offered to send pictures to another man and that trial counsel took no action on this information." *Id*. at 11. He contends that his counsel's "failure to follow up on Mayer's repeated reports of this information meant that the information was nonexistent at the trial." *Id*.

Mayer's counsel avers that, "[c]ontrary to Mr. Mayer's claim, I did not casually dismiss his thought: rather, I made a judgment as to the advisability and admissibility of such putative evidence." Reinschmidt Aff. at 6. In his affidavit, counsel explains that he and his partner "debated the wisdom, let alone the admissibility, of such evidence." *Id*. After researching Federal Rule of Evidence 412, "I ultimately decided that: 1) it

would likely be inadmissible and, 2) even if it was admissible, such questioning of the 14 year old minor female would be extremely prejudicial to Mr. Mayer's case." *Id.*

I conclude that counsel made a reasonable strategic decision. Federal Rule of Evidence 412, provides in pertinent part:

> **(a) Prohibited Uses**. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's sexual predisposition.
>
> **(b) Exceptions**.
>
> > **(1) Criminal Cases.** The court may admit the following evidence in a criminal case:
> >
> > > (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
> > >
> > > (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual if offered by the prosecutor; and
> > >
> > > (C) evidence whose exclusion would violate the defendant's constitutional rights.

FED. R. EVID. 412.

The advisory committee notes to Rule 412 indicate that "other sexual behavior" is broadly defined:

As amended, Rule 412 bars evidence offered to prove the victim's sexual behavior and alleged sexual predisposition. Evidence, which might otherwise be admissible under Rules 402, 404(b), 405, 607, 608, 609 of some other evidence rule, must be excluded if Rule 412 so requires. The word "other" is used to suggest some flexibility in admitting evidence "intrinsic" to the alleged sexual misconduct. *Cf.* Committee Note to 1991 amendment to Rule 404(b)

Past sexual behavior connotes all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact. *See, e.g., United States v. Galloway*, 937 F.2d 542 (10th Cir. 1991), *cert. denied*, 113 S. Ct. 418 (1992) (use of contraceptives inadmissible since use implies sexual activity); *United States v. One Feather*, 702 F.2d 736 (8th Cir. 1983) (birth of an illegitimate child inadmissible); State v. Carmichael, 727 P.2d 918, 925 (Kan. 1986) (evidence of venereal disease inadmissible). In addition, the word "behavior" should be construed to include activities of the mind, such as fantasies of dreams. *See* 23 C. Wright and K. Graham, Jr., *Federal Practice and Procedure*, § 5384 at p. 548 (1980) ("While there may be some doubt under statutes that require 'conduct,' it would seem that the language of Rule 412 is broad enough to encompass the behavior of the mind.").

The rule has been amended to also exclude all other evidence relating to an alleged victim of sexual misconduct that is offered to prove a sexual predisposition. This amendment is designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder. Admission of such evidence would contravene Rule 412's objectives of shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking. Consequently, unless the (b)(2)

> exception is satisfied, evidence such as that relating to the
> alleged victim's mode of dress, speech, or life-style will not
> be admissible.

FED. R. EVID. 412 advisory committee notes, subdivision (a); *see also United States v. Papakee*, 573 F.3d 569, 572-73 (8th Cir. 2009) (affirming exclusion of evidence that sexual abuse victim propositioned deputy sheriff for sex because proposition constituted "other sexual behavior" under Rule 412(a)(1)) (citing Rule 412's advisory committee notes).

Thus, under Rule 412(a)(1), the information Mayer sought to introduce about P.M. constituted "other sexual behavior." Mayer's counsel reasonably concluded that such evidence would not be admissible under any of the exceptions in Rule 412(b)(1). *See United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012) (affirming exclusion of online chat logs indicating that child victim sent explicit images of herself to other men because such evidence was barred under Rule 412); *see also United States v. Curtis*, 513 Fed. App'x 823, 828 (11th Cir. 2013) (holding that sexually explicit videos and images of the child victim's sexual history were properly excluded under Rule 412). Under such circumstances, Mayer's counsel was not ineffective in choosing not to seek this evidence's admission. Mayer's counsel made a reasonable strategic decision to focus his cross-examination of P.M. on her voluntary acts during her relationship with Mayer, emphasizing that each of her actions was taken of her "own free will."

I also find that Mayer was not prejudiced as a result of his counsel's strategic decision. First, such evidence would not have been admissible at trial. *See Ogden*, 685 F.3d at 605. Second, even if this evidence would have been admitted, there is not a reasonable probability that the result of Mayer's trial would have been different. All the prosecution needed to prove for the charge was that Mayer induced P.M. to engage in conduct to produce at least one explicit image. P.M. testified that Mayer specifically and

repeatedly requested that she send photos of her breasts, and genitalia, or a video of her "fingering herself," and that she was reluctant to do so initially. Eventually, P.M. used her cell phone to take the pictures and videos Mayer requested, and she sent them to Mayer via his e-mail account. P.M.'s testimony was corroborated by other evidence, including text message and call logs and evidence of her depictions on Mayer's computer. Further, Mayer's admissions provided strong evidence of his guilt. These included his admissions in the plea agreement, his admissions in his videotaped interview, and his testimony that he had sent P.M. approximately 30 to 40 pictures of his erect penis and approximately 8 to 10 videos of him masturbating and ejaculating. Evidence that P.M. had offered to send images of herself to another man would not impeach P.M.'s testimony that Mayer induced her to produce at least one explicit image of herself for him. Thus, I conclude that Mayer has again failed to satisfy both the incompetence prong and prejudice prong of *Strickland* and this claim is also denied.

### D.    *Certificate Of Appealability*

Mayer must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Mayer's motion does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Mayer's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Mayer wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## III. CONCLUSION

For the reasons discussed above, Mayer's Amended Motion under 28 U.S.C. § 2255 is denied in its entirety.[4] This case is dismissed. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.
**DATED** this 2nd day of June, 2015.

*Mark W. Bennett*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[4] Because Mayer has not challenged his convictions or sentences on Counts 2 and 3, even assuming *arguendo* that Mayer had prevailed on his § 2255 motion, such a result would have no effect on either the 180 month sentence he received on Count 2, or the 120 month sentence he received on Count 3.